#27774-r-DG
**2017 S.D. 2**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

KEITH MENDENHALL,                                    Plaintiff and Appellant,

    v.

LISA SWANSON,                                             Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JON S. FLEMMER
Judge

\* \* \* \*

JONATHAN K. VAN PATTEN
Vermillion, South Dakota                         Attorney for plaintiff
                                                                and appellant.


GREG L. PETERSON
JUSTIN M. SCOTT of
Bantz, Gosch & Cremer, LLC
Aberdeen, South Dakota                          Attorneys for defendant
                                                                and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
NOVEMBER 7, 2016
OPINION FILED **01/04/17**

GILBERTSON, Chief Justice

[¶1.]     Keith Mendenhall appeals a jury verdict awarding $211,710 to Lisa Swanson, his former wife, in compensatory and punitive damages for intentional infliction of emotional distress and alienation of affection.  Keith argues the circuit court erred by admitting 14 exhibits consisting of court documents from prior proceedings.  We reverse and remand.

## Facts and Procedural History

[¶2.]     Lisa married her first husband, Steve Swanson, in 1992.  Lisa and Steve had four children together.  In 2005, Steve died in a ranching accident.  Keith and Steve were close friends, and following Steve's passing, Keith helped Lisa continue to operate the Swanson ranch.  Keith and Lisa grew closer during this time and married approximately one year after Steve's death.  They had one child together.  Lisa and Keith separated in December 2010 and divorced in December 2011.

[¶3.]     Before the divorce was finalized, the relationship between Lisa and Keith deteriorated significantly.  Shortly after the separation, Lisa sought a protection order against Keith.  On March 3, 2011, Keith stipulated to the entry of a restraining order to run for five years, which was entered by Judge Jon Flemmer.  Six months later, on September 8, 2011, Lisa was granted a one-year protection order against Keith.  On March 18, 2013, Judge Scott Myren extended the

protection order until September 9, 2016.[1]  Judge Myren issued findings of fact detailing Keith's conduct toward Lisa.

[¶4.]	Meanwhile, the parties also clashed over the custody of their child. Judge Robert Timm awarded primary physical custody to Lisa on August 22, 2012. One week later, on August 29, Keith filed a motion for a change in custody.  He also requested the circuit court order Lisa to submit to psychological evaluation.  Judge David Gienapp denied both requests on February 1, 2013, with a letter decision.  On May 28, 2014, in another letter decision, Judge Gienapp held Keith in contempt for failing to abide by the court's child-visitation arrangement.

[¶5.]	Keith initiated the present action on October 19, 2012.  He brought a claim for slander against Lisa, alleging she had falsely reported to a law-enforcement officer that Keith had sexually abused her daughter.  Lisa counterclaimed for intentional infliction of emotional distress, invasion of privacy, slander, and alienation of her daughter's affection.  Since that time, Keith has been held in contempt two additional times for failing to comply with an order for discovery and an order to pay costs.

[¶6.]	Before trial, Lisa made a motion for judgment as a matter of law on Keith's slander claim, which was granted.  The remaining claims proceeded to trial January 19–22, 2016.  Leading up to the trial, Lisa persuaded the circuit court to admit 14 exhibits consisting of documents from the various, prior proceedings discussed above.  These documents included Judge Gienapp's two letter decisions

---

1.	An order was entered on August 27, 2012, that extended the original one-year order until a hearing could be held on Lisa's request to extend the protection order.

#27774

and Judge Myren's findings of fact and conclusions of law.  At trial, the court received those documents into evidence and issued Jury Instruction 38, which stated:

> I have taken judicial notice of the facts contained in the following documents, which have been marked and admitted as exhibits in this matter, which you will be able to take into your jury deliberations:
>
> > Letter Decision, Judge Gienapp 2-1-13 re custody and Keith's request for mental health evaluation of Lisa, 10-94
> >
> > Letter Decision, Judge Gienapp 5-8-14 re contempt and visitation, 10-94
> >
> > Findings of Fact and Conclusions of Law, 10-1094, 5-28-14
> >
> > Order 10-1094 re contempt and visitation, 5-28-14
> >
> > Stipulation for Restraining Order, Roberts Co., Civ. 11-38, 3-3-11
> >
> > Order of Protection, Roberts Co. TPO 11-0127, 9-8-11
> >
> > Order of Protection, 11-0127, 3-25-13 (modification)
> >
> > Bench Ruling 1-10-13 on Contempt, Restraining Order viol'ns
> >
> > Findings of Fact and Conclusions of Law 11-38, 3-18-13
> >
> > Modification of Restraining Order 11-38, 3-18-13
> >
> > Findings of Fact and Conclusions of Law 11-38, 5-29-14
> >
> > Second Modification of Restraining Order 11-38, 5-29-14
> >
> > Order re Contempt, Day County Civ. 13-34 11-10-15
> >
> > State v. Mendenhall Judgment of Conviction CR 98-0236
>
> You must accept as conclusive any fact judicially noticed.
>
> You should consider these judicially noticed facts along with other testimony and exhibits introduced during the trial in deciding any of the issues before you.

The jury subsequently found in favor of Lisa on each of her counterclaims except slander and awarded compensatory damages in the amount of $11,710 for intentional infliction of emotional distress and $25,000 for alienation of affection. The jury also awarded Lisa $175,000 in punitive damages.

-3-

[¶7.]     Keith appeals, raising one issue: Whether the circuit court erred by taking judicial notice of the facts contained in the documentation of prior proceedings.[2]

## Analysis and Decision

[¶8.]     Keith primarily argues that it is improper for the circuit court to admit the 14 exhibits listed in Instruction 38. According to Keith, the circuit court improperly took judicial notice of the facts in those exhibits. In contrast, Lisa argues that the instruction was justified under principles of issue preclusion. She further argues that even if those documents were improperly noticed, she presented other evidence and witness testimony sufficient to justify the jury's verdict.

[¶9.]     "Judicial notice is merely a substitute for the conventional method of taking evidence to establish facts." *Grand Opera Co. v. Twentieth Century-Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956). The doctrine "governs judicial notice of an adjudicative fact only, not a legislative fact." SDCL 19-19-201(a). "Adjudicative facts are those which relate to the immediate parties involved—the who, what, when, where[,] and why as between the parties." *In re Dorsey & Whitney Tr. Co.*, 2001 S.D. 35, ¶ 19, 623 N.W.2d 468, 474 (citing Fed. R. Evid. 201 advisory comm.'s note to subdiv. (a)). Under South Dakota's rules of evidence, a "court may judicially notice [an adjudicative] fact that is not subject to reasonable dispute because it: (1) Is generally known within the trial court's territorial jurisdiction; or (2) Can be accurately and readily determined from sources whose accuracy cannot reasonably

2.     Initially, Keith also appealed the circuit court's dismissal of his slander claim. The parties subsequently submitted a joint motion to withdraw this issue on appeal, which this Court granted.

be questioned." SDCL 19-19-201(b). Generally speaking, a court may not judicially notice a fact simply because it has been previously included in the findings of fact of a prior proceeding.

> While judicial findings of fact may be more reliable than other facts found in the file, this does not make them indisputable; they were disputed at trial and if the case is overturned on appeal, they will be disputed again. If a fact found in one case could be judicially noticed as true, then the doctrine of res judicata would be virtually superfluous because a party in one case could not dispute any fact that was found true in another case, whether or not the party had any opportunity to litigate that fact. Be that as it may, most courts agree that Rule 201 does not permit courts to judicially notice the truth of findings of fact.

21B Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5106.4 (2d ed.) (footnotes omitted), Westlaw (database updated April 2016); *accord In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 468 (6th Cir. 2014); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829-30 (5th Cir. 1998); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Liberty Mut. Ins. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992); *Holloway v. Lockhart*, 813 F.2d 874, 878-79 (8th Cir. 1987).

[¶10.]     Even so, principles of issue preclusion might apply to prior factual findings. "Under the judicially-developed doctrine of [issue preclusion], once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158, 104 S. Ct. 568, 571, 78 L. Ed. 2d 379 (1984). This doctrine "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980). A party may

invoke issue preclusion either offensively or defensively. *See Melbourn v. Benham*, 292 N.W.2d 335, 339 n.3 (S.D. 1980) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)). However, "there must have been 'a full and fair opportunity to litigate the issues in the prior proceeding.'" *Am. Family Ins. Grp. v. Robnik*, 2010 S.D. 69, ¶ 20, 787 N.W.2d 768, 775 (quoting *People ex rel. L.S.*, 2006 S.D. 76, ¶ 22, 721 N.W.2d 83, 90).

[¶11.]     It is unclear whether the circuit court admitted the 14 exhibits listed above, *see supra* ¶ 6, on the basis of judicial notice, issue preclusion, or some combination of the two. Throughout the various submissions and hearings, the court and the parties conflated these two concepts. Lisa initially asked the court to apply the doctrine of issue preclusion to Exhibits 9, 10, and 11. On the basis of those exhibits, she asked the court to grant summary judgment on her counterclaims for intentional infliction of emotional distress and alienation of affection. Yet, Lisa later submitted a motion titled "Request for Judicial Notice" in reference to all 14 exhibits. In a subsequent written order, the court granted the motion, stating: "Defendant has requested that the [c]ourt take judicial notice of various pleadings from the parties' divorce, restraining order, and protection order proceedings. These pleadings are matters of public record and it is appropriate for the [c]ourt to take judicial notice of the same." Similarly, at a pretrial hearing, the court noted: "I think the [c]ourt has previously ruled that judicial notice would be taken of those documents." However, the court went on to explain: "I believe that was the intent in asking for the judicial notice so that the documents would be

entered into evidence and would be part of the evidence without the need to provide testimony as to what led up to those."

[¶12.] Regardless of whether the court relied on judicial notice or issue preclusion, it failed to conduct the appropriate analysis in either case. As explained above, the doctrines of judicial notice and issue preclusion each have specific prerequisites to application. *See supra* ¶¶ 9-10. An analysis of these elements is not apparent in the record in regard to any of the 14 exhibits, let alone to *each* of the facts contained in those exhibits.[3] In order to treat those facts as conclusively established or proven, the court should have analyzed them under SDCL 19-19-201[4] or principles of issue preclusion. The court's failure to do so was error.

[¶13.] Even so, Lisa contends that any error was harmless because she introduced sufficient evidence to sustain the jury's verdict independent of the 14 exhibits. The circuit court's error is subject to the harmless-error rule. Under that rule, "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." SDCL 15-6-61. In a civil action, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole,

---

3.   Exhibit 10 alone had 49 separate findings of fact.

4.   Even if some of these facts are judicially noticeable, "[t]he right to take judicial notice of some thing, or occurrence, or record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially noticeable matter is [a]dmissible in evidence." *Winekoff v. Pospisil*, 181 N.W.2d 897, 899-900 (Mich. 1970). While technically not "evidence," a fact judicially noticed must be relevant and may not violate exclusionary rules of evidence. 21B Graham, *supra* ¶ 9, § 5104; *see also United States v. Watson*, 695 F.3d 159, 165-66 (1st Cir. 2012).

that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557 (1946); *see also Voorhees Cattle Co. v. Dak. Feeding Co.*, 2015 S.D. 68, ¶ 17, 868 N.W.2d 399, 408 ("Error is prejudicial if it 'most likely has had some effect on the verdict and harmed the substantial rights of the moving party.'" (quoting *Schoon v. Looby*, 2003 S.D. 123, ¶ 18, 670 N.W.2d 885, 891)); 11 Charles Alan Wright et al., *Federal Practice & Procedure* § 2883 (3d ed.), Westlaw (database updated April 2016). Thus, contrary to Lisa's argument, "[t]he [harmless-error] inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." *Kotteakos*, 328 U.S. at 765, 66 S. Ct. at 1248.

[¶14.] We think the circuit court's error likely did have a substantial influence on the jury's verdict. The 14 exhibits were made available to the jury during its deliberations. The court informed the jury that it "should consider [the] judicially noticed facts [in the 14 exhibits] along with other testimony and exhibits introduced during the trial in deciding any of the issues before you." The court also instructed the jury that it was required to "accept as conclusive any fact judicially noticed." Additionally, during closing argument, Lisa's counsel elaborated on the meaning of Instruction 38:

> We also made your job a little easier by asking Judge Flemmer
> to take judicial notice of the documents that he identified for you
> earlier. . . . Judge Flemmer instructed you in 38 that you must
> accept as conclusive any fact judicially noticed. So you can reject
> all of Keith's testimony and you can accept as conclusive all of
> the Findings of Fact that you'll see in those documents that are

identified clearly for you in Instruction #38. Those documents were prepared after judges heard sworn testimony and received exhibits just like you folks have seen and heard here this week. They have been finally and irreversibly established. *Keith can argue and testify until he's blue in the face trying to convince you that the judges had it wrong. But . . . you do not have the option to disregard or disagree with the facts in those exhibits.* When you get back in your juryroom go ahead and take time to look at both the [c]ourt's instructions and those documents we've given you.

(Emphasis added.) The court's instructions, as well as Lisa's counsel's argument to the jury, were designed to ensure the 14 exhibits had a substantial influence on the jury's decision. We presume that the jury followed the court's instructions. *See Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 33, 878 N.W.2d 604, 618. Therefore, we conclude the circuit court's failure to properly admit the 14 exhibits by either judicial notice or issue preclusion was prejudicial.

## Conclusion

[¶15.]     Factual findings from previous proceedings are not per se noticeable under Rule 201. In order to justify Instruction 38, the court was required to analyze the facts contained in the 14 exhibits under principles of judicial notice or issue preclusion. The court's failure to do so was error. Considering the court's jury instructions and opposing counsel's closing argument, we think the court's error likely had a substantial influence on the jury's verdict.

[¶16.]     We reverse and remand for a new trial.

[¶17.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.