#30969-r-MES
**2026 S.D. 1**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE
ESTATE OF JUDITH ANN O'NEILL,
Deceased.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
TODD COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BOBBI J. RANK
Judge

* * * *

MICHAEL V. WHEELER of
DeMersseman Jensen Tellinghuisen
   & Huffman, LLP
Rapid City, South Dakota

JAMES G. SWORD
Hot Springs, South Dakota               Attorneys for appellant James
                                        Anthony O'Neill.


CLINT SARGENT of
Meierhenry Sargent LLP
Sioux Falls, South Dakota

JAMES S. SIMKO of
Cadwell, Sanford, Deibert
   & Garry LLP
Sioux Falls, South Dakota               Attorneys for appellees Sandy
                                        Lang, Beth O'Neill, and Richard
                                        O'Neill.

* * * *

CONSIDERED ON BRIEFS
OCTOBER 7, 2025
OPINION FILED **01/07/26**

#30969

SALTER, Justice

[¶1.]     James Anthony O'Neill (Tony), filed a petition for formal probate of his mother's last will and testament and a first codicil (collectively the Will) which left her entire estate to Tony and specifically disinherited her other children.  Tony's siblings filed an objection, asserting the Will was the product of undue influence.  At the trial of this undue influence claim, the circuit court relied upon the doctrine of collateral estoppel to admit findings of fact and conclusions of law entered in a prior civil case involving Tony and his brother, Richard O'Neill (Rick).  The court also instructed the jury that all of the previous findings and conclusions—including adverse credibility determinations regarding Tony's testimony—had been conclusively established.  The jury determined that Tony unduly influenced his mother, and as a result, the Will was invalid.  Tony appeals.  We reverse and remand for a new trial.

## Factual and Procedural Background

[¶2.]     Judith and Dean O'Neill were a married couple who farmed and ranched in Bennett County and raised their four children, Tony, Rick, Sandy Lang, and Beth O'Neill.  When Tony and Rick became adults, they began their own farming and ranching operation in the area, and the two brothers worked together for a number of years.

[¶3.]     But beginning in 2011, Tony and Rick began to separate their business interests and their related real and personal property.  As part of the effort, they attempted to divide their property through written agreements.  Eventually,

-1-

however, there was a significant amount of conflict as to the effect and enforceability of the agreements.

[¶4.] In order to resolve their differences and complete the division of the two brothers' property, Tony sought judicial intervention and commenced a civil action in Bennett County (the prior action). The prior action was tried to the court in July 2013, and, simply put, Tony lost badly on all issues. The court enforced both a land separation agreement and an asset separation agreement and divided the remaining assets in a way that resulted in Rick receiving more property than Tony, in part, Rick later explained, because Tony had drafted the agreements unwisely.

[¶5.] The court in the prior action entered comprehensive written findings of fact and conclusions of law related to the brothers' business dealings and property. Among these were discrete findings and conclusions about the land separation agreement, including allegations that Rick forged Tony's signature and claims that Tony surreptitiously listed the brothers' farm and cattle businesses as collateral on loans for Tony's own separate ventures.

[¶6.] In connection with its resolution of these issues contrary to Tony's positions, the prior court made multiple adverse credibility determinations in which it found Tony's version of particular facts relating to his dealings with Rick or their farming and ranching business were "not credible." In addition, the prior court made other findings concerning Tony's conduct vis-à-vis Rick that were highly unfavorable, including the following pointed critique:

> Tony's strategy in dealing with Rick has been one of dishonesty and malicious mischief. Tony was not honest with Rick before this lawsuit, and during this lawsuit, in the handling of the corporate financing. In addition, Tony committed fraud on this

court by lying about the existence of a signed Land Separation Agreement. . . . Tony was also not honest with this court when he denied the existence of the negotiated agreement reached between the parties.[1]

[¶7.] Seemingly unrelated to her sons' business dispute, Judith had grown weary of Dean's mistreatment, which she stated included years of verbal and physical abuse. In 2013, she moved from the family's farm to Rapid City, and she commenced a divorce action in 2014. During the pendency of the divorce, Judith executed her Will on August 26, 2016, leaving to Tony 100% of her interest in all the real estate she and Dean owned. Judith also stated in her Will, "It is my specific request that Tony receive the family ranch home place upon my death." She left the remainder of her estate to Tony and her daughter Sandy, in equal shares.

[¶8.] As explained by her former divorce lawyers during their testimony in the undue influence trial, Judith's effort to obtain a divorce was protracted. She believed the reason was, at least in part, attributable to delay tactics orchestrated by Dean. As time went by, Judith also attributed some of the blame to Sandy, who sought a conservatorship for Judith only days before the scheduled divorce trial. Judith and Dean ultimately settled their divorce in April 2018, and the resulting decree required Dean to make an equalization payment to Judith in the amount of $605,000.

---

1. Tony appealed the judgment in the prior action, and we affirmed it in a published decision, with the exception of a punitive damage award imposed against Tony, which we vacated. *See O'Neill v. O'Neill*, 2016 S.D. 15, 876 N.W.2d 486.

[¶9.]        Prior to this, though, Judith executed the first codicil to the Will on July 26, 2017, which removed Sandy from her estate plan.  Under the first codicil, Judith left all her real estate, as well as the entirety of the remainder of her estate, to Tony and excluded her other children by stating, "As it relates to Richard O'Neill, Beth O'Neill, and Sandy Lang f/n/a [sic] Sandy O'Neill, they are specifically and intentionally omitted form [sic] this Will and shall not receive anything from my Estate."

[¶10.]        Judith died on November 28, 2018, and Tony filed a petition for formal probate of the Will on March 20, 2019.  His siblings—Rick, Sandy, and Beth (the Respondents)—filed an objection, alleging that Judith's Will was the product of undue influence, lack of capacity, fraud, duress, mistake, and revocation.

[¶11.]        Prior to the undue influence trial, the Respondents moved for an order declaring the factual findings from the prior action as conclusively established pursuant to the doctrine of collateral estoppel.  In their written submissions to the circuit court, the Respondents described the prior action as "a tense, lengthy, and deeply personal case that centered on document validity (partnership separation agreements and land separation agreements) and fiduciary duties owed to the brothers' farm corporations."

[¶12.]        The Respondents alleged a relationship between the outcome of the prior litigation involving business issues between Tony and Rick and the undue influence case, but more in terms of a case theory—not particular common issues.  For instance, the Respondents claimed that the prior litigation left Tony in a perilous financial condition which, in turn, led him to exert undue influence over

Judith through deception about Rick. But, critically, the Respondents did not identify particular issues from the prior litigation that were identical to the ones in the undue influence case.

[¶13.]        Rather, the effort by the Respondents to use collateral estoppel to admit the findings and conclusions from the prior litigation seemed more of an effort to establish an unflattering aspect of Tony's conduct or character. They claimed, in this regard, that "Tony's conduct in his business separation with Rick, Tony's defiance of court orders and witness oaths, and Tony's cascading financial condition are all so blended and connected with the elements of undue influence that [the prior court's] findings are *part of the res gestae of Tony's overall scheme.*" (Emphasis added.)

[¶14.]        Tony opposed the admission of the findings and conclusions on several bases and maintained that credibility determinations were for the finder of fact in the undue influence trial. And as it related to specific areas that the Respondents believe were conclusively established by the prior action, Tony argued the Respondents were required to "identify each finding of fact it would intend to offer so that it may be properly scrutinized by the court and counsel prior to its use at trial."

[¶15.]        The circuit court admitted nearly all of the findings and conclusions as a trial exhibit that spanned 44 pages, excepting only a portion relating to a punitive damage award we reversed on appeal.[2] *See supra* n.1. The court concluded *en*

---

2.     The circuit court also admitted a six-page order reflecting the division of the
       land and assets between Tony and Rick, as well as a subsequently entered,
                                                             (continued . . .)

*masse* "that the elements of issue preclusion have been met with respect to the foregoing findings and conclusions" and that the Respondents were "not required to put on evidence to re-litigate any of those issues, nor can Tony O'Neill re-litigate any of those issues." However, the court ordered that the prior action findings and conclusions were subject to other evidentiary challenges such as relevancy. The court ordered Tony to raise any such "additional evidentiary objections . . . in writing and identified by paragraph number with appropriate authority supporting the objection[.]"

[¶16.]     Although the undue influence trial was rescheduled several times, Tony never submitted written objections to further challenge the admission of the findings and conclusions other than the objections he identified initially. Tony's counsel renewed those objections prior to the beginning of the undue influence trial and again during Tony's testimony.

[¶17.]     The prior action findings and conclusions featured prominently in the Respondents' case during the undue influence trial. However, the findings and conclusions were used principally as a means of reopening specific collateral topics related to the brothers' prior business dealings and then juxtaposing Tony's discredited views of the underlying facts against the prior court's adverse findings relating to his credibility and conduct. The following exchange between the Respondents' counsel and Tony is emblematic:

_____

(. . . continued)
    three-page contempt order that included the finding that "Tony is . . . guilty of [c]ontempt of [c]ourt for failure to comply with the [c]ourt's [o]rder."

> **Counsel:** So in Finding of Fact 39, [the prior court] states, Rick made a copy of the written agreement signed by both he and Tony. A copy of the Land Separation Agreement is Exhibit C. Tony's testimony to the contrary is not credible.
>
> Again, you're disputing that still today?
>
> **Tony:** I don't agree with it but I've learned to live with it.
>
> **Counsel:** Finding of fact 40, the judge found that Tony took the original of Exhibit C with him at the conclusion of the meeting. Tony's testimony to the contrary is not credible.
>
> Again, you're disputing that you took the original with you that day?
>
> **Tony:** I don't agree with it but I've learned to live with it.

[¶18.] The circuit court later instructed the jury that they were to consider the findings and conclusions as "conclusively established facts that you must accept as true. Such findings and conclusions carry the same weight as all the evidence you heard in this trial."

[¶19.] The jury ultimately determined that Judith's Will was invalid due to Tony's undue influence of Judith. Tony appeals, asserting that the circuit court erred when it admitted the findings of fact and conclusions of law from the prior action.

### Analysis and Decision

*Collateral Estoppel*

[¶20.] Collateral estoppel, also known as issue preclusion, is one of two preclusion concepts encompassed by the doctrine of res judicata. *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 40, 978 N.W.2d 786, 798. The first type—issue

preclusion—"refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided." *Id.* (citation omitted).

[¶21.] The second type of res judicata, known as claim preclusion, is broader than issue preclusion and "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]" *Id.* (alteration in original) (citation omitted). Here, we are concerned only with issue preclusion, which when applicable, prevents relitigation of issues *actually* litigated in a prior proceeding. *Id.* ¶ 41.

[¶22.] We noted in *Mendenhall v. Swanson*, that principles of issue preclusion can apply to prior factual findings, explaining:

> Under the judicially-developed doctrine of [issue preclusion], once a court has decided an issue of fact or law *necessary to its judgment*, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation. . . . This doctrine relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication. . . . A party may invoke issue preclusion either offensively or defensively.

2017 S.D. 2, ¶ 10, 889 N.W.2d 416, 419–20 (internal citations omitted) (emphasis added).

[¶23.] Despite its utility, collateral estoppel may not lead to the preclusion of all facts in all subsequent cases; rather, it "bar[s] relitigation of an essential fact or issue involved in the earlier suit" and only if a four-part test is satisfied:

> (1) Was the issue decided in the prior adjudication *identical* with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior

-8-

adjudication? (4) Did the party against whom the plea is asserted have a full and fair opportunity to litigate the issue in the prior adjudication?

*Hamilton v. Sommers*, 2014 S.D. 76, ¶ 34, 855 N.W.2d 855, 866 (alteration in original) (citation omitted) (emphasis added).

[¶24.]     The challenge in this appeal implicates two particular collateral estoppel rules. The first, from the four-part test set out in *Hamilton*, requires us to consider whether the factual issues decided in the prior action relating to the division of farmland and assets between Tony and Rick are identical to those presented in the undue influence trial. And, second, as a fundamental requirement of collateral estoppel, we must consider whether the prior court's adverse credibility determinations relating to Tony's testimony were essential to its judgment. "We review a circuit court's application of collateral estoppel de novo." *Id.* (citation omitted).[3]

        1.     *Identical issues.*

[¶25.]     Tony maintains in this appeal that because the dispositive issues in the prior case and the present case are not identical, the circuit court erroneously applied collateral estoppel to the prior action findings and conclusions. The Respondents claim that Tony's conduct toward Rick as related in the findings and conclusions in the prior action, his defiance of court orders in the prior action, and

---

3.     In his appellate brief, Tony views the issue of admission of the findings and conclusions from the prior action as an evidentiary ruling to be reviewed under our abuse of discretion standard. But the fundamental issue presented here is whether the circuit court correctly applied collateral estoppel principles—a legal issue we review de novo.

his failing financial condition were all so blended and connected with the elements of undue influence that the issues in the two actions are identical.

[¶26.] We believe that the comparison the Respondents make between the two cases is more figurative, or thematic, than literal. The claims addressed in the prior action are much different than those in the undue influence action, and the constituent factual issues are not identical. Indeed, the Respondents have not identified the existence of any discrete issues that were litigated to completion in the prior action that were *identical* to those presented in the undue influence trial. *See Madalena v. Zurich Am. Ins. Co.*, 532 P.3d 776, 783 (Colo. Ct. App. 2023) ("An 'issue' may be one of evidentiary fact, ultimate fact, or law.") (citing Restatement (Second) of Judgments § 27 cmt. c).

[¶27.] As the undue influence litigation played out, it appears the Respondents sought to apply collateral estoppel to allow "factual findings" from the prior court, not so much to establish distinct facts about the merits of the prior action, but to support their assertion that Tony was not credible, had not followed the court's orders, and had mistreated Rick. In this way, the findings were part of a broader theory of the case for the Respondents, as explained by their counsel in his brief on the collateral estoppel issue:

> Starting in the summer of 2011, Tony set upon a scheme to bully his brother/business partner and gain financial advantage over him. Even before Tony commenced litigation against Rick, Tony portrayed himself to his mother as the victim. Tony convinced his mother that Rick was getting an unfair split of the partnership assets and that Dean had completely sided with Rick. Tony convinced Judith that Dean would disinherit Tony when Dean died. Tony convinced his mom that Rick has convinced his dad to disinherit Tony. Many of these facts were previously litigated and found to be untrue by [the prior court].

> However, Tony's allegations of Rick and Dean's conspiring against Tony were effective in convincing Judith to divorce Dean and to eventually disinherit all of her children and grandchildren except Tony.

[¶28.] Despite counsel's statement that "many of these facts . . . were found to be untrue," the prior court did *not* determine whether Tony had lied to his mother or tried to unduly influence her. The factual issues that were litigated in the prior action were simply not identical to those in the undue influence trial, which is not surprising given the vastly different nature of the two actions. The prior action was an effort to divide land and assets between Tony and Rick as former business partners; the undue influence case, predictably, featured different factual issues relating to Tony's conduct and alleged deception relating to Judith, not Rick.

[¶29.] The Respondents appear to argue that Tony's credibility or his duplicity, or both, were central issues pervading both cases, such that the credibility and misconduct findings from the prior action could be conclusive in the undue influence action. But this looks less like collateral estoppel and much more like other acts evidence. *See* SDCL 19-19-404 (Rule 404) (providing that character evidence is generally not admissible subject to certain exceptions). In fact, the Respondents have alluded, at various points in the case, to the evidentiary concept of res gestae—or intrinsic evidence—which is often associated with other acts evidence. *See State v. Stark*, 2011 S.D. 46, ¶ 25, 802 N.W.2d 165, 173 (distinguishing between res gestae and other acts evidence under Rule 404(b)). This excerpt from the Respondents' brief to the circuit court illustrates the point:

> Tony's conduct in his business separation with Rick, Tony's defiance of court orders and witness oaths, and Tony's cascading financial condition are all so blended and connected with the

elements of undue influence that [the prior court's] findings are part of the res gestae of Tony's overall scheme.

[¶30.] However, the circuit court admitted the prior action findings and conclusions under the doctrine of collateral estoppel—not res gestae or Rule 404. And using collateral estoppel to conclusively establish credibility or litigation misconduct issues from a prior action in a different later action is not sustainable.

2. *Issues necessary or essential to the prior judgment.*

[¶31.] In addition to erroneously determining widespread identity of issues between the prior action and the undue influence case, the circuit court's decision to admit the prior action findings and conclusions also failed to account for the fundamental design of the collateral estoppel doctrine—the findings were essential to the prior judgment. *See Mendenhall*, 2017 S.D. 2, ¶ 10, 889 N.W.2d at 419–20 (holding that issue preclusion requires the prior findings or conclusions were necessary or essential to the prior judgment); *Hamilton*, 2014 S.D. 76, ¶ 34, 855 N.W.2d at 866 (same). An issue was necessarily decided in an earlier action when it was "actually litigated" and was "essential to the prior decision." *Riverwood Com. Park, L.L.C. v. Standard Oil Co., Inc.*, 729 N.W.2d 101, 109 (N.D. 2007).

[¶32.] Here, when the circuit court adopted the findings and conclusions from the prior action, it made a general finding that the four-part collateral estoppel test from *Hamilton* was satisfied, but the court did not make specific findings on any of the enumerated requirements, including whether the prior action findings and conclusions were necessary or essential to the prior judgment. And from our review of the findings and conclusions, most or all of what the Respondents sought to establish through collateral estoppel were adverse credibility determinations

concerning Tony, which were decidedly not necessary or essential to the prior judgment.

[¶33.]     The Louisiana Court of Appeals' decision in *Rao v. Rao*, 927 So. 2d 356 (La. Ct. App. 2005), supports this conclusion. In *Rao*, the wife in a divorce action argued that the trial court's prior credibility determination on an unrelated issue—fault for purposes of final spousal support—also supported her assertion that an agreement was the product of a fraudulent scheme. *Id.* at 361. The wife argued that the "trial court's prior credibility determination in the context of resolving a different legal issue affords her the benefit of issue preclusion under the doctrine of collateral estoppel." *Id.* The appellate court rejected the claim and explained:

> While it is true that credibility is essentially a fact issue, *it is not generally the dispositive issue before the trier of fact*, but rather a preliminary issue or factor in the determination of the ultimate dispositive issue. As one court has stated, "[i]ssue preclusion requires the issue to be precluded to have been a *dispositive* issue which the prior court **must have considered** in a contest between the same parties." It is well settled that in reaching its conclusions, the trier of fact need not accept all of the testimony of any witness as being true or false and may believe and accept any part or parts of a witness's testimony and refuse to accept any other part or parts thereof.

*Id.* (citations omitted) (alteration and emphasis in original) (italics added).

[¶34.]     We think this reasoning is sound. In this case, the prior court's credibility determinations relating to Tony were not necessary or essential to the prior judgment. The court could have made the same determinations based simply upon the relative weight of the evidence, even rejecting certain evidence without holding, as it did, that Tony had been dishonest. Indeed, the credibility issues in the prior action are so remote to the issues in this undue influence case that they

created the not-so-subtle message that Tony was a liar in the undue influence case because he had been found not credible in the prior action involving Rick.

[¶35.]     Allowing the prior court's credibility determinations to be used in this preclusive way is inconsistent with the well-settled rule that credibility determinations are exclusively within the province of the jury. *Estate of Tank*, 2023 S.D. 59, ¶ 47, 998 N.W.2d 109, 124 (noting "[i]t is within the province of the jury as the ultimate trier of fact to weigh conflicting evidence and decide upon the credibility of witnesses.") (citation omitted); *State v. Rouse*, 2025 S.D. 29, ¶ 19, 23 N.W.3d 467, 474 ("The jury is the exclusive judge of the credibility of the witnesses[.]" (citation omitted)); 75A Am. Jur. 2d Trial § 955 ("In charging the jury, a trial judge may not interfere with the province of the jury in determining the credibility of witnesses, and the trial court's commenting on the witnesses' credibility may constitute prejudicial error."). For these reasons, the circuit court incorrectly applied the principles of collateral estoppel, and we must consider whether the error was prejudicial.[4]

---

4.    The Respondents claim that because Tony did not file specific written objections to particular findings as directed by the circuit court, "Tony has waived his right to contest the admission of [the findings and conclusions] on any basis other than the proper application of the doctrine of collateral estoppel and issue preclusion." But this argument suggests a distinction that does not exist; the proper application of the collateral estoppel rules *is* the issue Tony identifies on appeal. And as it relates to the prior court's adverse credibility findings in particular, Tony objected on the basis of relevance which is contained within the collateral estoppel showing of identity of issues, *i.e.*, if the issues presented at the earlier and later actions are, indeed, identical, evidence of the prior adjudication is not merely relevant to the later one—it is the same thing. *Cf. Megaro v. McCollum*, 66 F.4th 151, 160 (4th Cir. 2023) (collateral estoppel bars litigation of claims where four factors are met, including that "the issues were material and relevant to the disposition

(continued . . .)

*Prejudice*

[¶36.]        We have recognized that the circuit court's error in the application of collateral estoppel "is subject to the harmless-error rule." *Mendenhall*, 2017 S.D. 2, ¶ 13, 889 N.W.2d at 420–21 (court's erroneous treatment of facts as conclusively established analyzed for harmless error) (citing SDCL 15-6-61).  Under this rule, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Id.* (citing *Voorhees Cattle Co., LLP v. Dakota Feeding Co., LLC*, 2015 S.D. 68, ¶ 17, 868 N.W.2d 399, 408 (in determining whether evidence admitted to conclusively prove issues at trial was reversible error, court applied prejudicial error analysis, stating that error "is prejudicial if it 'most likely has had some effect on the verdict and harmed the [party's] substantial rights.'" (citation omitted))).

[¶37.]        The credibility of the witnesses is important in all cases, but perhaps particularly so in an undue influence case due to the nature of the evidence and difficulty in defending against such a claim.  As we have noted, in such cases, the testator is not available to testify, the influence is not usually exercised in the open, and there is often no direct proof of undue influence.  *In re Metz' Estate*, 100 N.W.2d 393, 397 (S.D. 1960); Thomas E. Simmons, *Testamentary Incapacity, Undue*

---

(. . . continued)
  of the prior action"); *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (collateral estoppel test includes requirement that "relevant issues were actually litigated and decided in the prior proceeding").

*Influence, and Insane Delusions*, 60 S.D. L. Rev. 175, 203 (2015) ("Direct evidence of undue influence is frequently unavailable because the testator is (obviously) deceased, the wrongdoer cannot be expected to provide helpful testimony, and most acts of undue influence occur in a private setting where the only observers were the testator and the wrongdoer, one of whom is dead and the other uncooperative.").

[¶38.]    Further, proof of the claim relies almost entirely on inference—the testator's susceptibility to influence, the opportunity to exert influence, the disposition to do so, and a result clearly showing the impact of influence. *Estate of Tank*, 2020 S.D. 2, ¶ 33, 938 N.W.2d 449, 459. This is undoubtedly why Tony's credibility was the centerpiece of the Respondents' case.

[¶39.]    Indeed, Tony's lack of credibility was the theme of much of opening statement and closing argument of counsel for the Respondents. During his opening statement, the Respondents' counsel claimed that "Tony lied to his mom. He cheated his brother. He committed fraud against his brother." Counsel also stated that the prior court concluded Tony was not credible and quoted portions of the findings and conclusions relating to the prior court's credibility determinations.

[¶40.]    In his closing argument, counsel for the Respondents told jurors that they must "conclusively accept" the findings and conclusions and, most significantly, connect Tony's credibility in the prior action to the current one by association—*i.e.*, because Tony had not disavowed his former testimony relating to his business dealings with Rick, he was lying in the undue influence case:

> It is a fact you must accept. Tony lied in court. Tony tried to defraud [the prior court]. . . . Now that's relevant . . . to instruction 14 where the Court says, if you believe that any witness testifying in this case has knowingly sworn falsely to

any material fact in this case, then you may reject all of the testimony of the witness.

One of the first questions I asked Tony, do you stand by all of the stuff that you told [the prior court] ten years ago. Right? I gave him a chance to say no, she caught me. Right? I was lying back then and I admit it, I apologize to Rick, I shouldn't have done that. But no, he's here lying to you as well.

He's still claiming that he believes Rick forged that document. He's still claiming that there was never a written signed agreement between the two of them.

[¶41.] But this sort of heads-I-win/tails-you-lose argument represents a disordered view of the credibility determination that the jury was required to make in this case. In our view, the circuit court's decision to admit the findings and conclusions and then instruct the jury that they were conclusive proof very likely had a massive impact on how the jury viewed Tony's testimony.[5] The jury was effectively advised that Tony's testimony was not credible, which we believe most likely had an effect on and substantially swayed the verdict, and therefore, affected Tony's substantial rights. *See Mendenhall*, 2017 S.D. 2, ¶ 13, 889 N.W.2d at 420–21; *Vorhees*, 2015 S.D. 68, ¶ 17, 868 N.W.2d at 408.

## Conclusion

[¶42.] The circuit court erred in wholesale admitting findings of fact and conclusions of law regarding issues that were not identical to issues in the present case and not necessary or essential to the prior judgment. By then instructing the

---

5. The jury was instructed that Tony and his mother were in a confidential relationship (Tony was Judith's attorney in fact), and the circuit court further instructed that if it found that Tony actively participated in the preparation of Judith's Will and he unduly profited therefrom, Tony bore the burden to show he did *not* take unfair advantage of his mother.

jury that all of the findings—including credibility determinations and specific statements that Tony had been dishonest with Rick and the court—and instructing the jury to consider those findings and conclusions as established, the court effectively foreclosed the jury's ability to undertake its own independent assessment of the witnesses' credibility on the issues more closely connected to the Respondents' undue influence claim.  We reverse and remand for a new trial.

[¶43.]        JENSEN, Chief Justice, and DEVANEY, and MYREN, Justices, and KERN, Retired Justice, concur.

[¶44.]        GUSINSKY, Justice, not having been a member of the Court at the time this action was considered by the Court, did not participate.